50 P.3d 627 (2002)
147 Wash.2d 41
STATE of Washington, DEPARTMENT OF LICENSING, Petitioner,
v.
Linda K. CANNON, Respondent.
No. 72453-9.
Supreme Court of Washington, En Banc.
Argued June 11, 2002.
Decided August 1, 2002.
*629 Lester & Assoc., Anthony Parise, Bellingham, for Respondent.
Patricia Allen, Bellingham, Christine Gregoire, Attorney General, Jonathon Gurisch, Asst., Olympia, for Petitioner.
*628 SMITH, J.
The Court of Appeals, Division One, under RCW 2.06.030, asked this court to decide an appeal of a decision of the Whatcom County Superior Court, dated April 23, 2002,[1] the principal issue relating to the result of a blood alcohol concentration (BAC) breath test administered to Respondent Linda K. Cannon by the Washington State Patrol. We accepted certification and granted direct review. We affirm the Whatcom County Superior Court.

QUESTION PRESENTED
The sole question in this case is whether Washington Administrative Code (WAC) XXX-XX-XXX requires the proponent of the breath test in an implied consent proceeding to produce evidence that the thermometer used in the test was certified as required by WAC 448-13-035.

STATEMENT OF FACTS
The driving privileges of Respondent Linda K. Cannon were suspended for 90 days by the Department of Licensing (DOL) for driving a motor vehicle under the influence of intoxicating liquor with an alcohol concentration above the legal limit of 0.08. The hearing officer in the DOL administrative hearing sustained the suspension. Respondent appealed to the Whatcom County Superior Court. That court determined that Respondent's breath test results should be suppressed and reversed the license suspension. Petitioner Washington State sought review by the Court of Appeals.
The relevant facts in this case are not in dispute. On July 20, 2001 Washington State Patrol Trooper Chad D. Bosman stopped Respondent for speeding and drifting between lane dividers on Lake Way Drive Southeast near the I-5 interchange in Whatcom County.[2] Following the traffic stop, Trooper Bosman approached Respondent's vehicle and detected the odor of intoxicants on her breath.[3] He also observed that her eyes were watery and bloodshot, her speech was slurred, and her face was flushed.[4] Respondent stated she had consumed two glasses of wine.[5] She alighted from her vehicle and swayed in a circular motion while standing.[6]
At Trooper Bosman's request, Respondent Cannon agreed to field sobriety tests. She performed poorly on the various tests and registered a breath alcohol content of .101 on a portable breath tester.[7] The trooper arrested Respondent for driving under the influence (DUI)[8] of intoxicating liquor and advised her of her constitutional rights.[9] Respondent was then transported to the Whatcom County Jail for processing, where she was given the warnings about the implied *630 consent law requirement for submitting to alcohol testing.[10] She acknowledged these warnings by signature and submitted to a breath alcohol analysis on a BAC Verifier DataMaster breath alcohol concentration measuring device.[11] Back-to-back test readings were .101 and .100.
Complying with the implied consent statute, RCW 46.20.308, Trooper Bosman submitted a sworn "Report of Breath/Blood Test for Alcohol" to the Department of Licensing (DOL).[12] The DOL suspended Respondent Cannon's driving privileges for 90 days.[13] She requested a formal adjudicative hearing before the Department.[14] On September 13, 2001 the DOL held an administrative hearing by telephone to determine whether suspension of Respondent Cannon's driving privileges should be upheld.[15]
On September 27, 2001 the Hearing Officer, Terry A. Shuh, sustained the suspension of Respondent's license,[16] concluding that the DOL had jurisdiction to suspend her driving privileges, Trooper Bosman had probable cause to pull her over as well as arrest her, Respondent was properly informed of her rights and warnings under RCW 46.20.308, and the BAC test results exceeded the level at which the DOL is required to take action.[17] The Hearing Officer found that administration of the breath test was proper and that "[t]he requirements of WAC 448-13-040, 448-13-050, and the criteria for precision and accuracy as required by WAC 448-13-060 were met."[18]
Respondent Cannon appealed to the Whatcom County Superior Court. On November 26, 2001 the trial court, the Honorable Steven J. Mura, suppressed Respondent's breath test results and reversed her license suspension, holding that the breath test did not meet the state toxicologist's precision and accuracy standards under newly amended WAC 448-13-040 and 448-13-060.[19] In reaching that conclusion the trial court stated "WAC 448-13-040 and 448-13-060 require the proponent of the breath test to prove that the thermometer used in the subject breath test was certified as required by WAC 448-13-035 before the breath test can be considered valid."[20]
Petitioner Washington State sought discretionary review by the Court of Appeals, Division One. On March 12, 2002 the Court of Appeals Commissioner granted review. On April 23, 2002 the Court of Appeals certified the following question to this court:
Does WAC 448-13-040 require the proponent of the breath test in an implied consent proceeding to produce evidence that the thermometer used in the test was certified as required by WAC 448-13-035?[[21]]
On April 25, 2002 this court accepted certification under RCW 2.06.030 and granted direct review.

DISCUSSION
Petitioner Washington State challenges the decision of the Whatcom County Superior Court which reversed an order of the DOL suspending Respondent Linda K. Cannon's driver's license for driving under the influence of intoxicating liquor. The Superior Court held that under a newly amended administrative rule, WAC 448-13-040, the DOL was required to prove the thermometer used in Respondent Cannon's breath test was certified under WAC 448-13-035, but did not do so in this case.

*631 IMPLIED CONSENT LAW

The implied consent law, originally passed by initiative in 1968 and codified in 1969 as RCW 46.20.308,[22] affects persons who refuse a breath test, as well as those who submit to a test but apparently do not pass it. The statute was enacted (1) to discourage persons from driving motor vehicles while under the influence of alcohol or drugs; (2) to remove the driving privileges of those persons disposed to driving while intoxicated; and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.[23]
The implied consent law provides that a person who drives in this State is considered to have consented to a test to determine the alcohol content of that person's blood or breath if arrested for suspicion of driving under the influence of intoxicating liquor or any drugs.[24] After arrest, if a driver refuses a breath test[25] or submits to a test with results indicating an alcohol concentration of 0.08 or more, or 0.02 or above for persons under age 21,[26] the arresting officer is directed to serve notice in writing[27] on the person of the intent of DOL to suspend, revoke, or deny the person's license, permit, or driving privileges.[28] The officer is also required to inform the driver of the driver's right to an administrative hearing and the steps necessary to obtain such a hearing.[29]
After a driver is arrested for suspicion of driving under the influence of intoxicating liquor, the arresting officer must notify the DOL of the arrest and transmit a sworn report or declaration authorized by RCW 9A.72.085 within 72 hours except as may be delayed because of administration of a blood test.[30] Upon receipt of the officer's sworn report, the DOL will notify the person that that person's driving privilege is revoked, suspended, or denied and will afford the driver an opportunity to request a hearing to contest the suspension, revocation, or denial.[31]
A driver's license suspension or revocation hearing is an administrative proceeding governed by chapter 46.20 RCW.[32] If a hearing *632 *633 is requested, the scope of the hearing covers, among other issues, whether the law enforcement officer had reasonable grounds to believe the arrested person drove a motor vehicle while under the influence of intoxicating liquor or any drug and whether the requirements of the implied consent statute were satisfied before a breath test was administered.[33]
A hearing officer conducts the formal departmental hearing and may issue subpoenas for attendance of witnesses and production of documents.[34] At the hearing, the law enforcement officer's sworn report is prima facie evidence of a valid arrest and compliance with the requirements of the implied consent statute.[35] The sworn report and any other evidence accompanying it, as well as certifications authorized by the criminal rules for courts of limited jurisdiction,[36] are admissible at the hearing without further evidentiary foundation.[37]
The implied consent statute[38] is subject to the evidence admissibility statute in RCW 46.61.506.[39] Under that statute, evidence of *634 a driver's breath test is admissible only if the test administrator performed the test according to methods and procedures approved by the State Toxicologist.[40] RCW 46.61.506 provides, in part, that:
(1) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor or any drug, if the person's alcohol concentration is less than 0.08, it is evidence that may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor or any drug.
....
(3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.
....
(Emphasis added.)

ADMINISTRATION OF BREATH TEST PROGRAM (CHAPTER 448-13 WAC)
The State Toxicologist has the delegated authority to designate proper methods for the breath test program.[41] These procedures are found in several WAC provisions relating to the use and proper functioning of BAC Verifier DataMaster equipment.[42] One set of requirements relates to the breath test protocol of procedures covering the proper administration of the breath test (WAC 448-13-040), ensuring the accuracy of the BAC Verifier DataMaster test results by adherence to specific testing procedures (WAC 448-13-050), preventing interference with the test (WAC 448-13-055), and validating and certifying test results (WAC 448-13-060). Another group relates to a quality assurance program (QAP) designed by the State Toxicologist "to ensure the DataMasters are maintained in proper working order on a regular basis."[43]
Under the breath test procedures protocol, WAC 448-13-060, which the State Toxicologist, Dr. Barry K. Logan, Ph. D., amended by emergency order dated April 20, 2001,[44] establishes the requirements to be satisfied in order that a breath test will be considered valid. WAC 448-13-060 provides, in part, that:

*635 A [breath] test shall be a valid test and so certified, if the requirements of WAC 448-13-040, XXX-XX-XXX and XXX-XX-XXX are met, and in addition the following criteria for precision and accuracy, as determined solely from the breath test document, are met:
....
If these criteria are met, then these and no other factors are necessary to indicate the proper working order of the instrument, and so certify it, at the time of the breath test.
(5) These criteria have changed over time, and the criteria applied to determine the validity of any test and so certify it, should be those provisions of the Washington Administrative Code in effect at the time the test is administered.
(Emphasis added.)
Both the former and current administrative regulation relating to the validity of a breath test, WAC 448-13-040, discuss the requisite method for performing a breath test. This provision provides several safeguards that must be "observed by the operator" before a BAC Verifier DataMaster test is performed, including that:
(1) The person does not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test; and (2) the subject does not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen minute observation period....
Former WAC 448-13-040 also provided that:

The temperature of the solution in the simulator prior to the start of the test must be thirty-four degrees centigrade plus or minus 0.2 degrees centigrade. During the test the person will be required to provide at least two valid breath samples. A refusal to provide a valid breath sample at any point during the test will constitute a refusal. The results of the test will be provided in the form of a printout on a breath test document. These results will indicate the grams of alcohol per two hundred ten liters of breath.
(Emphasis added.)
On April 20, 2001 the Washington State Toxicologist amended WAC 448-13-040 and promulgated a new emergency rule regarding the simulator thermometer certification, WAC 448-13-035. WAC 448-13-040 was amended to read:
Prior to the start of the test the operator must verify that the thermometer, certified per WAC 448-13-035, indicates that the temperature of the simulator solution is thirty-four degrees centigrade plus or minus 0.3 degrees centigrade.
(Emphasis added.)
The newly promulgated rule, WAC 448-13-035, states:
The ability of the simulator to provide a reference ethanol vapor concentration is a function of its temperature. The thermometers used in the simulators shall be certified on an annual basis to have an accuracy of within plus or minus 0.1 degree centigrade. Such certification shall be made using a reference thermometer traceable to standards maintained by the National Institute of Standards and Testing (NIST), or its successor.
In his Emergency Rule Making Order, the State Toxicologist indicated the reasons for the changes:
Judges in Renton District Court and Bellevue Municipal Court have ruled that the thermometers used in the simulators on breath test instruments do not have sufficient accuracy to meet the existing WAC standard of thirty four degrees plus or minus 0.2 degrees centigrade, which impacts the admissibility of the breath test result. Other courts may follow suit. All parties have stipulated that the limitations of the thermometers do not affect the accuracy of the results of the breath test.
In light of the ruling from Renton, the acceptable variance specified in the WAC for the temperature of the simulator at the time of the test is being expanded to be plus or minus 0.3 degrees centigrade. This permits the continued use of the current instrument standard of plus or minus *636 0.2 degrees centigrade at the time of the test, and recognizes the limits of accuracy of the thermometer. An additional provision requires the thermometers to be certified at least annually.[[45]]
These provisions are intended to address the concerns of the courts on the admissibility of breath alcohol test results, and to permit all future tests to be considered as evidence provided they meet these and existing requirements of the administrative code.
(Emphasis added.)
Respondent Cannon contends that, because of the changes to WAC 448-13-040 and the promulgation of WAC 448-13-035, the DOL had an obligation to introduce evidence relating to certification of the thermometer in the BAC Verifier DataMaster machine. Petitioner Washington State argues that such a showing is not necessary. The State argues that it need not comply with the regulation in order to establish a valid breath test because the thermometer certification program is not a substantive requirement.
In this State "`[r]ules of statutory construction apply to administrative rules and regulations, particularly where ... they are adopted pursuant to express legislative authority.'"[46] Under rules of statutory construction, this court interprets a WAC provision to ascertain and give effect to its underlying policy and intent. To determine that intent, the court looks first to the language of the provision. If an administrative rule or regulation is clear on its face, its meaning is to be derived from the plain language of the provision alone.[47]
Like a statute, an administrative rule or regulation is unclear if it can be reasonably interpreted in more than one way; however, it is not ambiguous simply because different interpretations are conceivable.[48] This court is not "obliged to discern any ambiguity by imagining a variety of alternative interpretations."[49] Rules and regulations are to be given a rational, sensible interpretation.[50]
An unambiguous rule or regulation is not subject to judicial construction.[51] Administrative rules and regulations are interpreted as a whole, giving effect to all the language and harmonizing all provisions.[52] This court will not add to or subtract from the clear language of a statute, rule, or regulation even if it believes the Legislature, or in this case, the State Toxicologist, intended something else but did not adequately express it[53] unless the addition or subtraction of language is imperatively required to make the statute rational.[54] This court will avoid a literal reading of a provision if it would result in unlikely, absurd, or strained consequences.[55]
If an administrative rule or regulation is ambiguous, this court resorts to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it.[56] The court must construe *637 an ambiguous rule or regulation to effectuate the intent of the Legislature, or in this case, the State Toxicologist.[57] In construing an ambiguous provision, courts may not read into it matters that are not in it[58] and may not create legislation or promulgate rules under the guise of interpreting a provision.[59]
To be considered valid, the entire breath test must be performed by following the requirements of WAC 448-13-060. Under that provision, to admit a breath test the State must prove it complied with WAC 448-13-040, 050,055, as well as with the criteria listed in WAC 448-13-060.
Petitioner's argument is inconsistent with the clear language of WAC 448-13-040. On its face, that section is not ambiguous and there is no need for judicial interpretation beyond its plain language. The plain language of that provision, which incorporates the simulator thermometer certification under WAC 448-13-035 by reference, specifies several safeguards that must be observed by the operator before a BAC Verifier DataMaster test is performed. Verifying that the thermometer is certified under WAC 448-13-035 is simply a new safeguard the State Toxicologist found necessary to add to the obligatory language of WAC 448-13-040.
The language of WAC 448-13-040 is mandatory. Because WAC 448-13-035 includes language concerning certification of the thermometer, its requirement must be proven by the State in order to sustain a valid breath test. That the simulator thermometer must meet certain requirements is no different from the other requirements listed in WAC 448-13-040 that must be met in order for a breath test to be valid. This court has stated that "[t]he ultimate concern of the judiciary is that the methods approved result in an accurate test, competently administered, so that a defendant is assured that the test results do in fact reflect a reliable and accurate measure of his or her breath content."[60]

SUMMARY AND CONCLUSIONS
The sole question in this case is whether WAC 448-13-040 requires the proponent of the breath test in an implied consent proceeding to produce evidence that the thermometer used in the test was certified as required by WAC 448-13-035.
A driver's license suspension or revocation hearing is an administrative proceeding governed by the implied consent statute, RCW 46.20.308. That statute is subject to the evidence admissibility statute in RCW 46.61.506, which states that evidence of a driver's breath test is admissible only if "performed according to methods approved by the state toxicologist."
The proper methods and procedures for the breath test program, announced by the State Toxicologist, are found in WAC 448-13-060, which states that a breath test is "a valid test ... if the requirements of WAC 448-13-040, 448-13-050 and 448-13-055 are met, and in addition the ... criteria for precision and accuracy [found in WAC 448-13-060], as determined solely from the breath test document, are met."
WAC 448-13-040, which specifies the requisite method for performing a breath test, was recently amended to read "[p]rior to the start of the test the operator must verify that the thermometer, certified per WAC 448-13-035, indicates that the temperature of the simulator solution is thirty-four degrees centigrade plus or minus 0.3 degrees centigrade." WAC 448-13-035, which was promulgated by the State Toxicologist at the same time WAC 448-13-040 was amended, requires the thermometers used in the simulators to "be certified on an annual basis to have an accuracy of within plus or minus 0.1 degree centigrade."
Respondent Cannon argues that under the WAC, the DOL is required to introduce evidence relating to certification of the thermometer in the BAC Verifier DataMaster machine. Petitioner Washington State contends *638 this is not necessary. That contention is inconsistent with the plain language of WAC 448-13-040, which incorporates the simulator thermometer certification under WAC 448-13-035 by reference and requires safeguards that must be observed by an operator before a breath test is performed. These safeguards include verifying that the thermometer is certified under WAC 448-13-035. That certification must be proven by the State in order to sustain a valid breath test.
WAC 448-13-040 does require the proponent of a breath test in an implied consent proceeding to produce evidence that the thermometer used in the test was certified as required by WAC 448-13-035. In reaching that conclusion, we affirm the Whatcom County Superior Court in suppressing Respondent Linda K. Cannon's breath test results and in reversing her license suspension by the Department of Licensing.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] Dep't of Licensing v. Cannon, Order of Certification, Court of Appeals, Division One, Number 49615-8-I, dated April 23, 2002.
[2] Clerk's Papers at 17 (Per se suspension (Adult) Findings of Fact, Conclusions of Law and Final Order).
[3] Id.
[4] Id.
[5] Id.
[6] Id.
[7] Id. at 30.
[8] Id. at 17.
[9] Id. at 25.
[10] Id. at 30; RCW 46.20.308.
[11] Clerk's Papers at 32.
[12] Id. at 20.
[13] Id. at 39. Respondent, a resident of Pennsylvania, is only licensed to drive in that state.
[14] Id. at 35-38.
[15] Id. at 15.
[16] Id. at 14.
[17] Id. at 18-19.
[18] Id. at 18.
[19] Id. at 9.
[20] Id.
[21] Dep't of Licensing v. Cannon, Order of Certification, Court of Appeals, Division One, Number 49615-8-I, dated April 23, 2002.
[22] Initiative Measure 242; Laws of 1969, ch. 1, § 1.
[23] Medcalf v. Dep't of Licensing, 133 Wash.2d 290, 297, 944 P.2d 1014 (1997).
[24] RCW 46.20.308(1).
[25] RCW 46.20.308(5).
[26] RCW 46.20.308(6).
[27] RCW 46.20.308(6)(a); see also RCW 46.20.308(2)(a), (b), and (c) (mandating specific warnings to be given to a driver before a breath test is administered).
[28] RCW 46.20.308(7); see also RCW 46.20.3101.
[29] RCW 46.20.308(6)(b).
[30] RCW 46.20.308(6)(e).
[31] RCW 46.20.308(7); see also RCW 46.20.3101.
[32] RCW 46.20.308 provides in pertinent part:

"(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration or presence of any drug in his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person has been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503.
"(2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or any drug or the person to have been driving or in actual physical control of a motor vehicle while having alcohol in a concentration in violation of RCW 46.61.503 in his or her system and being under the age of twenty-one. However, in those instances where the person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample or where the person is being treated in a hospital, clinic, doctor's office, emergency medical vehicle, ambulance, or other similar facility in which a breath testing instrument is not present or where the officer has reasonable grounds to believe that the person is under the influence of a drug, a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4). The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that:
"(a) His or her license, permit, or privilege to drive will be revoked or denied if he or she refuses to submit to the test;
"(b) His or her license, permit, or privilege to drive will be suspended, revoked, or denied if the test is administered and the test indicates the alcohol concentration of the person's breath or blood is 0.08 or more, in the case of a person age twenty-one or over, or in violation of RCW 46.61.502, 46.61.503, or 46.61.504 in the case of a person under age twenty-one; and
"(c) His or her refusal to take the test may be used in a criminal trial.
"(3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.
"....
"(5) If, following his or her arrest and receipt of warnings under subsection (2) of this section, the person arrested refuses upon request of a law enforcement officer to submit to a test or tests of his or her breath or blood, no test shall be given except as authorized under subsection (3) or (4) of this section.
"(6) If, after arrest and after the applicable conditions and requirements of this section have been satisfied, a test or tests of the person's blood or breath is administered and the test results indicate that the alcohol concentration of the person's breath or blood is 0.08 or more if the person is age twenty-one or over, or is in violation of RCW 46.61.502, 46.61.503, or 46.61.504 if the person is under the age of twenty-one, or the person refuses to submit to a test, the arresting officer or other law enforcement officer at whose direction any test has been given, or the department, where applicable, if the arrest results in a test of the person's blood, shall:
"(a) Serve notice in writing on the person on behalf of the department of its intention to suspend, revoke, or deny the person's license, permit, or privilege to drive as required by subsection (7) of this section;
"(b) Serve notice in writing on the person on behalf of the department of his or her right to a hearing, specifying the steps he or she must take to obtain a hearing as provided by subsection (8) of this section;
"(c) Mark the person's Washington state driver's license or permit to drive, if any, in a manner authorized by the department;
"(d) Serve notice in writing that the marked license or permit, if any, is a temporary license that is valid for sixty days from the date of arrest or from the date notice has been given in the event notice is given by the department following a blood test, or until the suspension, revocation, or denial of the person's license, permit, or privilege to drive is sustained at a hearing pursuant to subsection (8) of this section, whichever occurs first. No temporary license is valid to any greater degree than the license or permit that it replaces; and
"(e) Immediately notify the department of the arrest and transmit to the department within seventy-two hours, except as delayed as the result of a blood test, a sworn report or report under a declaration authorized by RCW 9A.72.085 that states:
"(i) That the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or drugs, or both, or was under the age of twenty-one years and had been driving or was in actual physical control of a motor vehicle while having an alcohol concentration in violation of RCW 46.61.503;
"(ii) That after receipt of the warnings required by subsection (2) of this section the person refused to submit to a test of his or her blood or breath, or a test was administered and the results indicated that the alcohol concentration of the person's breath or blood was 0.08 or more if the person is age twenty-one or over, or was in violation of RCW 46.61.502, 46.61.503, or 46.61.504 if the person is under the age of twenty-one; and
"(iii) Any other information that the director may require by rule.
"(7) The department of licensing, upon the receipt of a sworn report or report under a declaration authorized by RCW 9A.72.085 under subsection (6)(e) of this section, shall suspend, revoke, or deny the person's license, permit, or privilege to drive or any nonresident operating privilege, as provided in RCW 46.20.3101, such suspension, revocation, or denial to be effective beginning sixty days from the date of arrest or from the date notice has been given in the event notice is given by the department following a blood test, or when sustained at a hearing pursuant to subsection (8) of this section, whichever occurs first.
"(8) A person receiving notification under subsection (6)(b) of this section may, within thirty days after the notice has been given, request in writing a formal hearing before the department. The person shall pay a fee of one hundred dollars as part of the request. If the request is mailed, it must be postmarked within thirty days after receipt of the notification. Upon timely receipt of such a request for a formal hearing, including receipt of the required one hundred dollar fee, the department shall afford the person an opportunity for a hearing. The department may waive the required one hundred dollar fee if the person is an indigent as defined in RCW 10.101.010.... For the purposes of this section, the scope of the hearing shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or any drug or had been driving or was in actual physical control of a motor vehicle within this state while having alcohol in his or her system in a concentration in violation of RCW 46.61.503 and was under the age of twenty-one, whether the person was placed under arrest, and (a) whether the person refused to submit to the test or tests upon request of the officer after having been informed that such refusal would result in the revocation of the person's license, permit, or privilege to drive, or (b) if a test or tests were administered, whether the applicable requirements of this section were satisfied before the administration of the test or tests, whether the person submitted to the test or tests, or whether a test was administered without express consent as permitted under this section, and whether the test or tests indicated that the alcohol concentration of the person's breath or blood was 0.08 or more if the person was age twenty-one or over at the time of the arrest, or was in violation of RCW 46.61.502, 46.61.503, or 46.61.504 if the person was under the age of twenty-one at the time of the arrest. The sworn report or report under a declaration authorized by RCW 9A.72.085 submitted by a law enforcement officer is prima facie evidence that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or drugs, or both, or the person had been driving or was in actual physical control of a motor vehicle within this state while having alcohol in his or her system in a concentration in violation of RCW 46.61.503 and was under the age of twenty-one and that the officer complied with the requirements of this section.
"A hearing officer shall conduct the hearing, may issue subpoenas for the attendance of witnesses and the production of documents, and shall administer oaths to witnesses.... The sworn report or report under a declaration authorized by RCW 9A.72.085 of the law enforcement officer and any other evidence accompanying the report shall be admissible without further evidentiary foundation and the certifications authorized by the criminal rules of courts of limited jurisdiction shall be admissible without further evidentiary foundation. The person may be represented by counsel, may question witnesses, may present evidence, and may testify. The department shall order that the suspension, revocation, or denial either be rescinded or sustained.
"(9) If the suspension, revocation, or denial is sustained after such a hearing, the person whose license, privilege, or permit is suspended, revoked, or denied has the right to file a petition in the superior court of the county of arrest to review the final order of revocation by the department in the same manner as an appeal from a decision of a court of limited jurisdiction.... [T]he appeal shall be limited to a review of the record of the administrative hearing.... A petition filed under this subsection must include the petitioner's grounds for requesting review. Upon granting petitioner's request for review, the court shall review the department's final order of suspension, revocation, or denial as expeditiously as possible. The review must be limited to a determination of whether the department has committed any errors of law. The superior court shall accept those factual determinations supported by substantial evidence in the record: (a) That were expressly made by the department; or (b) that may reasonably be inferred from the final order of the department. The superior court may reverse, affirm, or modify the decision of the department or remand the case back to the department for further proceedings. The decision of the superior court must be in writing and filed in the clerk's office with the other papers in the case. The court shall state the reasons for the decision...."
[33] RCW 46.20.308(8).
[34] RCW 46.20.308(8); see also RCW 46.20.329; RCW 46.20.332.
[35] RCW 46.20.308(8).
[36] See, e.g., Criminal Rules for Courts of Limited Jurisdiction (CrRLJ) 6.13.
[37] RCW 46.20.308(8).
[38] RCW 46.20.308(1).
[39] The basic foundational requirements for admission of breath test results were first established in State v. Baker, 56 Wash.2d 846, 852, 355 P.2d 806 (1960). When the BAC Verifier DataMaster replaced the Breathalyzer machine, a similar set of foundational requirements were adopted, ultimately codified in chapter 448-12 WAC, the precursor to the current WAC regulations in chapter 448-13 WAC. The new machine, and its supporting protocols, were challenged but approved in State v. Ford, 110 Wash.2d 827, 755 P.2d 806 (1988) and State v. Straka, 116 Wash.2d 859, 810 P.2d 888 (1991).
[40] RCW 46.61.506(3).
[41] RCW 46.61.506; State v. Wittenbarger, 124 Wash.2d 467, 473, 880 P.2d 517 (1994).
[42] WAC 448-13-010 articulates the reasons for the rules governing breath testing: (1) to inform "the public of the administrative aspects of the state's breath alcohol test program" and (2) to practice those principles accepted in the scientific community. Walk v. Dep't of Licensing, 95 Wash.App. 653, 657, 976 P.2d 185 (1999).
[43] Wittenbarger, 124 Wash.2d at 473, 880 P.2d 517; see, e.g., WAC 448-13-080, -110, -160, and -170.
[44] Under RCW 34.05.350(1)(a), the State Toxicologist found that "immediate adoption, amendment or repeal of a rule" was "necessary for the preservation of the public health, safety, or general welfare" and "that observing the time requirements of notice and opportunity to comment upon adoption of a permanent rule would be contrary to public interest." St. Reg. XX-XX-XXX (May 16, 2001) (State's Toxicologist's finding of an emergency rule to be codified at WAC 448-13-035, 448-13-040); see also St. Reg. XX-XX-XXX (Apr. 18, 2001) (proposal statement of inquiry); St. Reg. XX-XX-XXX (June 6, 2001) (proposed rule change to be codified at WAC 448-13-035, 448-13-040, 448-13-060); St. Reg. XX-XX-XXX (Aug. 2, 2001) (to be codified at WAC 448-13-035). A permanent rule with identical language was later adopted by the State Toxicologist. St. Reg. XX-XX-XXX (Sept. 5, 2001).
[45] Emergency Rule-Making Order WSR XX-XX-XXX (Apr. 20, 2001) (on file with the Code Reviser).
[46] City of Kent v. Beigh, 145 Wash.2d 33, 45, 32 P.3d 258 (2001) (quoting State v. Burke, 92 Wash.2d 474, 478, 598 P.2d 395 (1979)).
[47] See State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001).
[48] See id. at 276, 19 P.3d 1030.
[49] Id. at 276-77, 19 P.3d 1030 (quoting W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 608, 998 P.2d 884 (2000)).
[50] State v. Thomas, 121 Wash.2d 504, 512, 851 P.2d 673 (1993).
[51] See Keller, 143 Wash.2d at 276, 19 P.3d 1030.
[52] See id. at 277, 19 P.3d 1030.
[53] See Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wash.2d 894, 904, 949 P.2d 1291 (1997).
[54] See State v. Sullivan, 143 Wash.2d 162, 175, 19 P.3d 1012 (2001) (citing State v. Taylor, 97 Wash.2d 724, 728, 649 P.2d 633 (1982)).
[55] See State ex rel. Royal v. Yakima County Comm'rs, 123 Wash.2d 451, 462, 869 P.2d 56 (1994) (quoting State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989)).
[56] See Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001).
[57] See Davis v. State ex rel. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999).
[58] See Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wash.2d 677, 688, 790 P.2d 604 (1990).
[59] See Associated Gen. Contractors v. King County, 124 Wash.2d 855, 865, 881 P.2d 996 (1994).
[60] Ford, 110 Wash.2d at 833, 755 P.2d 806.