# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CENTRAL STEEL, INC.,<br><br>Appellant,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES,<br><br>Respondent. | DIVISION ONE<br><br>No. 77432-8-I (consol. with No. 77530-8-I)<br><br>UNPUBLISHED OPINION<br><br>FILED: February 19, 2019 |

DWYER, J. — Central Steel, Inc., appeals from a superior court order reinstating a citation issued by the Department of Labor and Industries pursuant to the Washington Industrial Safety and Health Act of 1973[1] (WISHA). The citation, alleging that Central Steel failed to properly guard protruding rebar as required by WAC 296-155-680(7)(a), was vacated by the Board of Industrial Insurance Appeals but was subsequently reinstated by the superior court. Because the Board based its decision to vacate the citation upon a misinterpretation of WAC 296-155-680(7)(a) and its findings of fact support a conclusion that Central Steel failed to properly guard all protruding rebar as required by the regulation, we affirm the superior court's order.

I

Central Steel, a steel construction company, was hired as a subcontractor

---

[1] Ch. 49.17 RCW.

to build rebar walls for the Seattle Tunnel Project. In February 2015, Central Steel workers arrived on site to construct a rebar wall[2] and discovered that there was vertically placed rebar exposed in the area underneath the wall on which they would be working. Recognizing that the exposed rebar posed an impalement hazard and that there were insufficient caps available to cover all of the exposed rebar dowels, the Central Steel foreperson instructed the workers to place rebar and wooden two-by-fours horizontally near the tops of the remaining exposed rebar dowels. This left at least a quarter to a half an inch of the top of the rebar dowels exposed.

After placing rebar and wooden two-by-fours horizontally near the tops of the exposed vertical rebar dowels, the Central Steel workers commenced building the rebar lattice wall. The work progressed smoothly until the workers were approximately 30 feet above the ground, at which point the rebar wall on which the workers were standing began to fail, resulting in both the workers and the rebar wall they had constructed falling backward and down to the ground below. One Central Steel worker sustained serious injuries, including a punctured lung, a damaged kidney, and broken ribs, but no worker was impaled on the vertically placed rebar dowels.

The Department sent an investigator to the construction site to investigate the collapse and resulting injuries. At the close of its investigation, the Department issued a citation to Central Steel for a serious safety violation of

---

[2] Such a wall is constructed of rebar dowels formed into a lattice attached to a retaining wall, with workers standing upon the horizontal pieces of rebar in the lower part of the lattice to place higher pieces.

WISHA regulations.[3] The Department found that Central Steel had failed to protect its employees from the hazard of impalement as required by WAC 296-155-680(7)(a):

> The employer did not ensure that all protruding pieces of reinforcing bar were significantly protected with sufficient means to prevent the impalement of workers installing rebar curtain walls directly above the exposed bar. Five ironworkers were working from an elevated location, directly above exposed ends of #9 vertical reinforcing bars, installing horizontal members of a tie-in-place wall. The injuries that occur when a worker is impaled on rebar are serious and would require hospitalization and possibly result in serious permanent disability.

Central Steel requested review by the Board, which vacated the impalement hazard citation. In its decision, the Board explained that while some of the ends of exposed pieces of vertical rebar were covered, "others had pieces of rebar or wooden beams tied to the tops of the dowels, leaving approximately one-half to one-quarter inch of the dowel exposed." The Board concluded that placing wooden two-by-fours and rebar horizontally near the tops of exposed vertically placed rebar dowels was an acceptable method of eliminating the hazard of impalement because WAC 296-155-680(7)(a) "does not specify which methods are acceptable for eliminating the impalement hazard." The Board explained that the tying of wooden beams or pieces of rebar near the tops of exposed vertical rebar were methods "accepted within the industry as eliminating the risk of impalement." Thus, in finding of fact number three of its decision and order, the Board found that "[t]he employees of Central Steel eliminated the

---

[3] The Department also issued a second citation, finding that Central Steel had failed to adequately reinforce the wall to prevent its collapse in violation of WAC 296-155-680(7)(c). However, the second citation is not at issue in this appeal.

impalement hazard created by exposed dowels at their worksite by replacing rebar caps on the exposed dowels or by tying wooden beams or pieces of rebar near the top of the exposed dowels." As a result, the Board concluded that Central Steel did not violate WAC 296-155-680(7)(a).

On judicial review, the superior court reversed the Board's decision and reinstated the citation. The court ruled that the Board committed legal error by concluding that WAC 296-155-680(7)(a) "[did] not specify which methods are acceptable for eliminating the impalement hazard." Explaining that the WAC incorporates by reference the American National Standards Institute's (ANSI) Safety Requirements for Concrete and Masonry Work, the court analyzed the 2013 version of those requirements and held that the "regulation is unambiguous and clear: every tip of every piece of rebar onto which an employee may fall must be 'covered.'" Thus, the court reinstated the citation because the Board had explicitly found that some of the exposed rebar had tips that were not covered. Central Steel appeals.

## II

Central Steel contends that the citation it received for failing to properly guard exposed rebar was properly vacated by the Board because: (1) WAC 296-155-680(7)(a) does not specify the manner in which employers are required to eliminate the hazard of impalement posed by exposed rebar, and (2) the Board's findings of fact and conclusions of law are supported by the record. We disagree.

A

WISHA governs our review of a Board decision. RCW 49.17.150(1). We review the Board's decision based on the record before the Board. Potelco, Inc. v. Dep't of Labor & Indus., 194 Wn. App. 428, 434, 377 P.3d 251 (2016) (citing Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009)). The Board's findings of fact are conclusive if they are supported by substantial evidence. Mowat, 148 Wn. App. at 925. Substantial evidence is evidence sufficient to convince a fair-minded person of the truth of the matter asserted. Potelco, 194 Wn. App. at 434 (citing Mowat, 148 Wn. App. at 925). If the Board's findings are supported by substantial evidence, we review whether those findings support the Board's conclusions of law. Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 202, 248 P.3d 1085 (2011).

B

The primary issue in this appeal is whether the Board correctly interpreted WAC 296-155-680(7)(a). Central Steel asserts that the Board's interpretation is correct. The Department asserts that the Board was wrong to rule that the regulation "does not specify which methods are acceptable for eliminating the impalement hazard." Therefore, the Department asserts, the Board committed legal error when it held that Central Steel did not violate WAC 296-155-680(7)(a). The Department has the better argument.

We review the Board's interpretation of WISHA regulations de novo. Erection Co., 160 Wn. App. at 201. "Administrative rules and regulations are interpreted as a whole, giving effect to all the language and harmonizing all

provisions." Cannon v. Dep't of Licensing, 147 Wn.2d 41, 57, 50 P.3d 627 (2002). "If an administrative rule or regulation is clear on its face, its meaning is to be derived from [its] plain language." Cannon, 147 Wn.2d at 56. If a regulation is ambiguous, courts apply canons of construction in order to interpret the regulation.[4] See Jongeward v. BNSF Ry., 174 Wn.2d 586, 600, 278 P.3d 157 (2012). WISHA regulations are construed "liberally to achieve their purpose of providing safe working conditions for workers in Washington." Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 36, 329 P.3d 91 (2014).

WAC 296-155-680(7)(a) states that employers "must guard all protruding reinforcing steel, onto and into which employees could fall, to eliminate the hazard of impalement."[5] "Guard" means "to protect from danger: DEFEND, SHIELD." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1007 (2002). "All" means "every member or individual component." WEBSTER'S, supra, at 54. "Protruding" means "to thrust out through or as if through a narrow orifice : cause

---

[4] The canons of statutory construction apply to the interpretation of administrative rules and regulations. Cannon, 147 Wn.2d at 56.

[5] Central Steel asserts that the most important clause in this subsection of the regulation is "onto and into which employees could fall." Central Steel contends that it did not violate the WAC because its workers could not have fallen onto or into the exposed rebar because they were wearing fall protection. Given that the record shows that the employees herein did actually fall onto the exposed rebar despite wearing fall protection, this argument rings hollow. Furthermore, "could" is the past tense of "can," which means to "be made possible or probable by circumstance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 323 (2002). Because it is possible for fall protection to fail, as it did herein, using fall protection does not eliminate the possibility that employees will fall onto or into exposed rebar placed below them. Additionally, the cases that Central Steel asserts support its position on this issue do not support the position that fall protection would satisfy the requirements of WAC 296-155-680(7)(a). Sec'y of Labor v. State Sheet Metal Co., 16 BNA OSHC 1155 (No. 90-1630,1993), simply does not ever discuss whether providing fall protection precludes a citation for failing to cover protruding steel. Sec'y of Labor v. Hackensack Steel Corp., 20 BNA OSHC 1387 (No. 97-0755, 2003), at least addresses a citation for the failure to guard protruding steel, but provides discussion only about the employer's failure to establish the multi-employer worksite defense, not whether providing fall protection excuses the failure to guard protruding steel.

to project or stick out." WEBSTER'S, supra, at 1826. Thus, the plain language of the regulation is clear that every piece of protruding steel must be shielded.

Because we must read the language of subsection (7)(a) as a part of the entire WAC, we also consider the language of subsection (7)(a) in the context of subsection (1). See Cannon, 147 Wn.2d at 57. Subsection (1) of WAC 296-155-680 provides further clarification on the manner in which employers must guard protruding rebar by incorporating by reference[6] the 1997 ANSI Concrete and Masonry Work Safety Requirements:

> (1) **General.** All equipment, material and construction techniques used in concrete construction and masonry work must meet the applicable requirements for design, construction, inspection, testing, maintenance and operations as prescribed in ANSI A10.9-1997, Concrete and Masonry Work Safety Requirements.

WAC 296-155-680(1).

The 1997 ANSI standards set forth explicit instructions for employers regarding the manner in which they must protect their employees from the impalement hazard posed by exposed rebar:

> Employees shall not be permitted to work above vertically protruding reinforcing steel unless it has been protected to eliminate [the] hazard of impalement **by covering the protruding ends of the steel with timber or other equivalent methods.**

---

[6] Central Steel asserts that the Department is precluded from making any arguments regarding the 1997 ANSI standard because the 1997 version of the standard was never introduced into evidence. However, given that the standard has been incorporated by reference into WAC 296-155-680, it is a part of the regulation and did not need to be entered into evidence. It is a longstanding rule of statutory construction, and therefore applicable to the construction of administrative regulations, that "precepts and terms to which reference is made are to be considered and treated as if they were incorporated into, and made a part of the referring act, just as completely as if they had been explicitly written therein." Pac. First Fed. Sav. & Loan Ass'n v. Pierce County, 27 Wn.2d 347, 355, 178 P.2d 351 (1947). Central Steel was required to follow the standards incorporated by reference into WAC 296-155-680 because they state the law. The standards are not evidence.

Caps or equivalent methods shall be used when there is a hazard of impalement from tripping while walking on grade.

(Emphasis added.)[7] The ANSI requirements direct employers to eliminate the hazard of impalement posed by exposed rebar specifically by "covering the protruding ends of the steel." "Cover" means to "be placed on or often over the whole surface of." WEBSTER'S, supra, at 524. Therefore, to comply with WAC 296-155-680(7)(a), Central Steel was required to place "timber or other equivalent methods" on or over the whole surface of all the protruding ends of steel rebar to eliminate the hazard of impalement.[8] The Board erred by concluding that WAC 296-155-680(7)(a) did not require Central Steel to eliminate the hazard of impalement in a specific manner.

As a result of the Board's legal error, it improperly found that Central Steel eliminated the hazard of impalement posed by the exposed rebar. Specifically, the Board erred by finding that the method of attaching wooden two-by-fours or rebar horizontally near the tops of exposed rebar, leaving a quarter to a half of an

---

[7] Central Steel asserts that the superior court erred in its decision because it analyzed the 2013 version of the ANSI standards rather than the 1997 version. However, the superior court's reference to the 2013 standards, as opposed to the 1997 standards, does not bear on the question of whether the Board misinterpreted WAC 296-155-680(7)(a). This is because we review the Board's decision directly. Moreover, the pertinent language of the 2013 standard is practically identical to that of the 1997 version. The 2013 version states that "[e]mployees shall not be permitted to work above vertical, horizontal or on grade protruding reinforcing steel or other hazardous projections unless they have been protected to eliminate [the] hazard of impalement **by covering the protruding ends to prevent impalement**." ANSI A10.9-2013 § 5.1.3.1 (emphasis added). It is apparent that the superior court's reference to the wrong edition of the standard had no impact on the outcome of its review.

[8] Pursuant to the last antecedent rule of interpretation, the clause "or other equivalent methods" refers solely to "timber" and not to "by covering the protruding ends." See City of Spokane v. Spokane County, 158 Wn.2d 661, 673, 146 P.3d 893 (2006) ("'[U]nless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent.'" (internal quotation marks omitted) (quoting Berrocal v. Fernandez, 155 Wn.2d 585, 593, 121 P.3d 82 (2005))).

inch of rebar exposed, eliminated the impalement hazard.[9] This is so because the Board found both the facts of a violation of WAC 296-155-680(7)(a) and that the hazard of impalement the WAC was intended to prevent was eliminated despite Central Steel's failure to comply with the regulation. See Coluccio Constr., 181 Wn. App. at 41-42 (concluding that where a standard prescribes certain conditions it presumes the existence of a hazard and that arguing that "'a hazard does not exist despite a violation is an impermissible challenge to the wisdom of the standard'" (internal quotation marks omitted) (quoting In re Wilder Constr. Co., No. 06 W1078, 2007 WL 3054874, at *4, 2007 WA Wrk. Comp. LEXIS 95 (Wash. Bd. of Indus. Ins. Appeals June 15, 2007))). The record is clear that Central Steel did not cover all the protruding ends of rebar and, therefore, failed to eliminate the impalement hazard posed by the rebar as required by WAC 296-155-680(7)(a).

C

Central Steel next contends that the Board correctly vacated the citation for violating WAC 296-155-680(7)(a) because the record provided insufficient evidence to show that Central Steel committed a serious WISHA violation. Specifically, Central Steel asserts that the Department failed to show that Central Steel workers were exposed to the impalement hazard posed by the exposed

---

[9] In its briefing, Central Steel attempts to frame the issue herein as whether substantial evidence supports the Board's finding that the impalement hazard was eliminated when Central Steel attached wooden two-by-fours and rebar near the tops of the exposed rebar. A necessary prerequisite to this approach is the assumption that WAC 296-155-680(7)(a) does not specify the manner in which Central Steel was required to eliminate the hazard of impalement. However, because the regulation does require a specific method of guarding the exposed rebar—namely, covering the exposed ends—other methods are insufficient as a matter of law.

rebar and that Central Steel knew or could have known about the uncovered rebar. For its part, the Department asserts that the record establishes both that Central Steel workers had access to the exposed rebar and that Central Steel knew about the exposed rebar. The Department is correct.

A serious WISHA violation occurs when (1) the standard or regulation applies, (2) the requirements of the standard or regulation were not met, (3) employees were exposed to the condition in violation of the standard or regulation, (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violation. Wash. Cedar, 119 Wn. App. at 914 (citing D.A. Collins Constr. Co. v. Sec'y of Labor, 117 F.3d 691, 694 (2d Cir. 1997)).

Employee exposure to a condition in violation of standards or regulations occurs when workers are "'exposed to, or had access to, the violative condition.'" Wash. Cedar, 119 Wn. App. at 914 (quoting Collins Constr., 117 F.3d at 694). To prove exposure, the Department must show by "'reasonable predictability that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger.'" Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus, 136 Wn. App. 1, 5, 146 P.3d 1212 (2006) (alteration in original) (quoting Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 147, 750 P.2d 1257 (1988)). Employees are exposed if it is reasonably likely that an employee working near a hazard "could have walked the short distance and been within the zone of danger." Mid Mountain, 136 Wn. App. at 7.

To establish knowledge for a serious WISHA violation the Department must show that "'the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition.'" Potelco, Inc. v. Dep't of Labor & Indus., 191 Wn. App. 9, 34, 361 P.3d 767 (2015) (internal quotation marks omitted) (quoting Coluccio Constr., 181 Wn. App. at 36-37). "'Reasonable diligence involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence.'" Erection Co., 160 Wn. App. at 206-07 (internal quotation marks omitted) (quoting Kokosing Constr. Co. v. Occupational Safety & Hazard Review Comm'n, 232 F. App'x 510, 512 , 2007 WL 1544150, at *2 (6th Cir. 2007)). If a hazardous condition is readily observable or in a conspicuous location in the area of an employer's crews, then the employer has constructive knowledge. BD Roofing, Inc. v. Dep't of Labor & Indus., 139 Wn. App. 98, 109-10, 161 P.3d 387 (2007). Additionally, knowledge may be imputed to the employer through a supervisory agent, including a crew foreperson. Potelco, 194 Wn. App. at 440.

Herein, the record is clear that Central Steel employees had access to the area containing exposed rebar and that Central Steel's foreperson knew about, and even directed employees on the methods to use to remediate, the impalement hazard posed by the presence of the exposed rebar dowels. Central Steel's assertion that its employees did not have access to the exposed rebar is patently absurd and contradictory to the record, as the record not only indicates that the employees worked in and directly above the area containing the exposed

11

rebar, but also that Central Steel employees actually fell onto the exposed rebar. Similarly, the record shows that the Central Steel foreperson on site knew about the exposed rebar at the worksite, and even directed Central Steel workers to attach wooden two-by-fours and rebar horizontally near the tops of the exposed rebar in an effort to eliminate the impalement hazard. Because the Central Steel foreperson had knowledge of the exposed rebar, and even ordered Central Steel workers to use an insufficient method to eliminate the impalement hazard, Central Steel had the necessary knowledge to commit a serious WISHA violation. See Potelco, 194 Wn. App. at 440.

Because the Board's decision vacating Central Steel's citation for a serious violation of WAC 296-155-680(7)(a) was premised upon an incorrect interpretation of the requirements of that regulation and because substantial evidence in the record establishes that Central Steel knowingly failed to follow the regulation's requirements, we reverse the Board's decision, thereby affirming the superior court's reinstatement of the citation for a serious violation of WAC 296-155-680(7)(a).

The superior court's order is affirmed.

We concur: