IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STUART L. MORROW,<br><br>                    Respondent,<br><br>          v.<br><br>STATE OF WASHINGTON<br>DEPARTMENT OF LICENSING,<br><br>                    Petitioner. | No. 87228-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — This case concerns an administrative decision to suspend Stuart Morrow's driving privilege following his arrest for driving while under the influence of intoxicants (DUI) and having breath test results for alcohol above .08. Morrow appealed the suspension to superior court, which reversed the suspension. Discretionary review was granted. The Department of Licensing (Department) argues the superior court's decision is in conflict with the Supreme Court's decision of State v. Keller, 2 Wn.3d 887, 545 P.3d 790 (2024). We agree and reverse.

FACTS

On August 16, 2022, Seattle Police Officer Joseph Wohlwend responded to a car collision, and, upon arrival, contacted the driver later identified as Stuart Morrow. Officer Wohlwend arrested Morrow after he determined Morrow was intoxicated. Officer Wohlwend advised Morrow the statutory warnings about the consequences of refusing or giving breath samples. Morrow provided samples of

his breath into the Dräger, an instrument approved by the state toxicologist for the "quantitative measurement of alcohol in a person's breath." WAC 448-16-020. The Dräger generated a breath test printout that showed breath test results of 0.099, 0.102, 0.09, and 0.101. Officer Wohlwend submitted his sworn report to the Department, wherein he described his contact with Morrow and attached the breath test printout. Thereafter, the Department notified Morrow it intended to suspend his driver's license. Morrow requested an administrative hearing to contest the suspension.

At the administrative hearing on October 12, 2022, Morrow argued his breath test results should be suppressed or given no weight because the Dräger instrument did not perform the mean and range calculation according to the method prescribed by the state toxicologist. Morrow relied on the same arguments contained in the record of the Keller case, which was pending before the Supreme Court on direct review of a district court order suppressing all breath test results in Kitsap County.

The hearing examiner entered a written ruling on February 3, 2023. In the written decision, the hearing examiner outlined the mathematical calculations she performed to determine the mean of the four breath test results and then she determined whether the lower and upper limits of the breath results agreed to within plus or minus 10 percent of their mean. She concluded that neither RCW 46.61.506 nor former WAC 448-16-060[1] required that the Dräger instrument "[be]

---

[1] The hearing examiner applied former WAC 448-16-060 which was later amended due to litigation surrounding the truncating versus rounding issues in Keller. WAC 448-16-060 was amended before the Keller decision was issued.

the only means by which agreement between the breath samples may be calculated." She noted that either rounding or truncating the mean to four decimal places complied with the method approved by the state toxicologist. The hearing examiner sustained the suspension of Morrow's driving privilege.

Morrow appealed to King County Superior Court. By agreement of the parties, the case was stayed pending a decision in Keller. On April 4, 2024, the Supreme Court issued an opinion in Keller and reversed the district court's suppression of the breath test results.

Following the issuance of the Keller decision, the superior court case resumed. Morrow claimed the hearing examiner erred in relying on the state toxicologist's 2022 declaration as approving the truncation method. He also claimed the breath test printout alone did not demonstrate the approved calculation, the Department needed to present additional factual evidence to prove their prima facie case to prove the results agreed within plus or minus 10 percent of the mean according to the method approved by the state toxicologist, and the hearing examiner could not calculate the mean, nor could the calculation occur at the time of the hearing.

The superior court issued a written ruling reversing the hearing examiner and concluded the hearing examiner erred in relying on the state toxicologist's 2022 declaration. The Department conceded this error. The superior court further concluded that "the evidence presented at or before the formal hearing, and of which Mr. Morrow had received notice, did not include evidence of compliance with the governing method contained in WAC 448-16-060."

The Department sought discretionary review, which a commissioner of this court granted under RAP 2.3(d)(1).

ANALYSIS

An understanding of the various statutes and administrative codes that govern breath tests is helpful before we address the merits of this case. Under the implied consent statute, any driver is deemed to have consented to a breath test to determine breath alcohol content if arrested for DUI. RCW 46.20.308(1). Before a breath test, the driver must receive statutory warnings about the consequences of taking or refusing the test. RCW 46.20.308(2). If the driver refuses a breath test or if the person has an alcohol concentration of 0.08 or more, a law enforcement officer must immediately notify the Department and submit the officer's sworn report showing the officer had probable cause to arrest the driver. RCW 46.20.308(5). Upon receipt of the sworn report, the Department must suspend the driver's license unless the driver requests an administrative hearing.

A license suspension hearing is an administrative proceeding governed by the implied consent statute, RCW 46.20.308. Dep't of Licensing v. Cannon, 147 Wn.2d 41, 59, 50 P.3d 627 (2002). That statute is subject to the evidence admissibility provisions in RCW 46.61.506, which states that the evidence of a driver's blood or breath is only admissible if "performed according to the methods approved by the state toxicologist." RCW 46.61.506(3); Cannon, 147 Wn. 2d at 59. A breath test performed by an instrument approved by the state toxicologist "shall be admissible" in an administrative hearing if the Department presents

"prima facie evidence" of the requirements set forth in RCW 46.61.506(4)(a)(i) –

(viii). RCW 46.61.506(4) contains eight evidentiary requirements to establish a

prima facie case for admissibility of the breath test results. The relevant section

states:

> The two breath samples agree to within plus or minus ten percent
> of their mean to be determined by the method approved by the
> state toxicologist[.]

RCW 46.61.506(4)(a)(vi). The approved method for determining whether the

two breath samples agree to within plus or minus 10 percent of their mean

was memorialized in former WAC 448-16-060.

The Dräger instrument calculated the mean of the four breath test results

by truncating that number to four digits after performing the basic arithmetic of

addition and division, i.e., adding the four breath test results and dividing by four.

However, pursuant to the method approved by the state toxicologist under the

former WAC 448-16-060, the mean is rounded to four digits.

The superior court concluded that the evidence presented at the

administrative hearing "did not include evidence of compliance with the governing

method contained in WAC 448-16-060." However, neither the statute nor the

regulation requires the Dräger machine itself compute the mean and the plus or

minus 10 percent calculation at the time of the test. Keller, 2 Wn.3d at 913-914.

The court stated, "Math can be performed – and produce the same results –

later." If the evidence shows breath test results fall within plus or minus 10

percent of their rounded mean according to the formula in former WAC 448-16-

060, they will always fall within that range regardless of by whom or when that

5

calculation is done. Keller, 2 Wn.3d at 920.

In this case, the hearing examiner's written decision was issued months after the hearing. In the written decision, she outlined the math to calculate the mean to determine whether the breath test results fall within the acceptable range:

> Performing the calculations in the Petitioner's case answers the question of . . . whether there is in fact agreement between breath samples. The Petitioner's samples are: .099, .102, .097, and .101. According to WAC 448-16-060, to calculate the mean of these results, the values are added together, divided by four, and then rounded to the fourth decimal place. The mean here is .0998. The lower acceptable level is given by multiplying the mean of 0.0998 by .9 which equals 0.08982. That number is then truncated to 0.089. The upper acceptable limit is level is [sic] given by multiplying the mean of 0.0998 by 1.1 which equals 0.10978. That number is truncated to 0.109. The results in this case lie between the upper and lower limits. There is a prima facie showing of compliance with RCW 46.61.506(4)(a)(vi).

Morrow does not challenge the hearing examiner's mathematical calculation. Nor does he challenge the results obtained from that calculation or the results of the breath test generated by the Dräger. Rather, he argues: (1) the breath test printout alone did not demonstrate the approved calculation, thus the Department needed to present additional factual evidence to prove its prima facie case, specifically, to prove the results agreed within plus or minus 10 percent of the mean according to the method approved by the state toxicologist; and (2) the hearing examiner could not calculate the mean, nor could the calculation occur at the time of the hearing. We disagree.[2]

---

[2] Morrow's contention appears to rest on the belief the hearing examiner relied on "extrinsic evidence" in generating the numbers following the calculations since the record closed. His argument is misplaced; Morrow requested the administrative record remain open to submit the officer's video about the encounter with Morrow.

" 'We review an administrative decision such as a license revocation from the same position as the superior court.' " Martin v. Dep't of Licensing, 175 Wn. App. 9, 18, 306 P.3d 969 (2013) (quoting Clement v. Dep't of Licensing, 109 Wn. App. 371, 374, 35 P.3d 1171 (2001)). "Thus, '[w]e review the administrative order to determine whether the Department committed any errors of law, and we uphold findings of fact supported by substantial evidence.' " Martin, 175 Wn. App at 18 (alteration in original) (quoting Lynch v. Dep't of Licensing, 163 Wn. App. 697, 705, 262 P.3d 65 (2011)).

Morrow suggests the Department was required to present expert testimony about the breath test printout, similar to the argument raised in Keller about Dr. Couper's 2015 declaration, namely that it could not be solely relied upon in determining prima facie admissibility of the breath test results. He relies on Singh v. Dep't of Licensing, 5 Wn. App.2d 1, 421 P.3d 504 (2018) to support this contention. We disagree with Morrow's reading of Keller, and the Singh case is distinguishable.

In Singh, the hearing examiner excluded the blood vial manufacturer's certificate of compliance from the administrative record. Singh, 5 Wn. App.2d at 5-6. The certificate of compliance was the only evidence available to demonstrate the blood vials contained an anticoagulant and enzyme poison, both of which were required to admit blood test results. Singh, 5 Wn. App.2d at 8-10. Without evidence that the collection tubes met these requirements under WAC 448-14-020(3)(a) and (b), the Department did not establish a prima facie case that preservation of Singh's blood complied with the statutory requirements.

7

Singh, 5 Wn. App.2d at 10.

In this case, the hearing examiner admitted the breath test printout. In an administrative hearing under the implied consent statute, the law enforcement officer's sworn report "and any other evidence accompanying the report shall be admissible without further evidentiary foundation." RCW 46.20.308(7). The admitted breath test printout, which showed test results of 0.099, 0.102, 0.097, and 0.101, and a sworn report by Officer Wohlwend, who administered Morrow's breath test, were presented at the hearing. Under RCW 46.20.308(7), the Department did not have to rely on expert testimony to comply with RCW 46.61.506(4)(a)(vi).

Moreover, Morrow misstates the holding in Keller. Keller held that the district court erred in denying the State's request to call an expert witness, and the state toxicologist's 2022 declaration cannot supersede the method required by the published rule. Keller, 2 Wn.3d at 915, 918. It did not hold the State must provide expert testimony or other declarations to establish prima facie evidence compliance with the plus or minus ten percent range. Rather, the court held that "there is no textual requirement that the Dräger compute the former WAC 448-16-060 calculation at the time of the test." Keller, 2 Wn.3d at 920. "Math can be performed . . . later." Keller, 2 Wn.3d at 920. The calculations " 'will always fall within that range regardless of by whom or when that calculation is done.' " Keller, 2 Wn.3d at 920 (quoting Initial Br. of App. at 21) (emphasis added).

Even if the hearing examiner erred in performing the calculation and determining the acceptable range, any error was harmless. In analyzing the

8

erroneous admissibility of evidence in an administrative hearing, we apply the nonconstitutional harmless error standard. State v. Kindell, 181 Wn. App. 844, 853, 326 P.3d 876 (2014). A nonconstitutional error "requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial." Kindell, 181 Wn. App. at 853. Here, the math demonstrates the results of Morrow's breath tests fall within the acceptable range using the method approved by the state toxicologist. The mean of the four results is 0.0998: (0.099 + 0.102 + 0.09 + 0.101)/4 = 0.0998. The low end of the acceptable range is 0.08982: 0.0998 x 0.9 = 0.08982; the high end of the range is 0.10978: 0.0998 x 1.1 = 0.10978. All of Morrow's breath test results fall within the range of 0.08982 and 0.10978. The math demonstrates the breath test results met the requirements of RCW 46.61.506(4)(a)(vi). Because these results would have been the same if the hearing examiner determined the results fell within the acceptable range at the hearing or in a written decision, or if the Department called an expert to submit a declaration performing the calculations, the breath test results would have been admitted. The hearing examiner could have properly considered the breath test results, even if the hearing examiner's reason for doing so was erroneous. Accordingly, there is no reasonable probability that the hearing examiners' error affected the outcome of the proceeding.

CONCLUSION

The superior court erred by reversing the hearing examiner's decision. We reverse and remand to the superior court to vacate its judgment, and affirm the hearing examiner's decision sustaining the driver's license suspension.

Bui, J.

WE CONCUR:

Díaz, J.

Chung, J.