70 P.3d 931 (2003)
149 Wash.2d 458
Eva MADER, Teresa Boyden (a/k/a Knudsen), and a class of similarly situated individuals, Petitioners,
v.
The HEALTH CARE AUTHORITY, State of Washington, Respondent,
The State Board for Community and Technical Colleges, Intervenor/Respondent.
No. 72273-1.
Supreme Court of Washington, En Banc.
Argued November 13, 2002.
Decided June 5, 2003.
As Corrected on Denial of Reconsideration August 12, 2003.[*]
*932 Bendich Stobaugh & Strong, David Stobaugh, Stephen Strong, Stephen Festor, Seattle, Wiggins Law Office, Charles Wiggins, Kenneth Masters, Bainbridge Is., for Petitioners.
Derek Edwards, Melissa Cain, Assistant Attorneys General, for Respondent.
Law Offices of Michael Gawley, Michael Gawley, Seattle, Amicus Curiae on Behalf of Washington Education Ass'n.
ALEXANDER, C.J.
We are called upon to determine whether Washington State's health care authority properly determined that part-time community college instructors Eva Mader and Teresa Knudsen (petitioners) were ineligible for employer contributions to their health care coverage during the summer quarter in 1999. We hold that the Health Care Authority (HCA) erred in focusing on petitioners' job titles and quarterly contracts, instead of employing an individualized approach based on petitioners' actual work circumstances, when determining their eligibility for employer contributions to their health care coverage. Because of the error, we remand to the HCA for a determination, consistent with this decision, of petitioners' eligibility. In addition, we conclude that the superior court abused its discretion in defining the class and we remand to the superior court for decertification of the class.

I. Facts
At all times material to this appeal, petitioners Eva Mader and Teresa Knudsen (also known as Boyden), were part-time community college instructors in this state. Since 1978, Mader has regularly taught two German language classes at North Seattle Community College (NSCC) in the fall, winter, and spring quarters. In each of the past 21 years, Mader was informed that NSCC would not contribute to her health care coverage during the summer quarter because she did not teach a class or classes during that quarter. As a result, Mader was faced each year with either paying a premium for health care coverage during the summer quarter or going without employer-based health care insurance during that period.
Teresa Knudsen has worked as a part-time instructor of English and literature for the *933 Community Colleges of Spokane (CCS) since 1984. Beginning in 1988, she consistently taught more than half-time in the fall, winter, and spring quarters, with the exception of the fall quarter in 1994. Knudsen also taught a summer quarter course in 1997 and 1998. Each summer, including those in which she taught a course, Knudsen was informed that she was not eligible for employer contributions to her health care coverage. Knudsen also received a letter of reasonable assurance from CCS in the spring of 1998 which "guaranteed" her at least 66 percent[1] of a full-time work load for the fall quarter of 1998. Certified Appeal Board Record (AR) at 244. It was signed and returned prior to the end of the spring quarter in that year. She received a similar letter in the spring of 1999 and signed the "offer for fall 1999 employment" on June 18, 1999. AR at 348.
The record discloses that Mader's and Knudsen's circumstances are not unique. Many part-time community and technical college instructors are deemed ineligible for employer contributions to their health insurance during the summer quarter. Although each employee is given the opportunity to self-pay, some do not maintain coverage due to the cost. In recent years, Mader paid for her summer health care coverage at a cost to her of approximately $750 each summer. In 1999, Knudsen paid approximately $830 for her summer health care coverage.
On December 3, 1998, Mader and Knudsen together sought a determination from the HCA, the agency responsible for the eligibility requirements for health care coverage of state employees, that they and other "similarly situated [part-time] community college employees" were entitled to state-paid health benefits during the summer quarters. AR at 14. The deputy program manager of the Public Employees' Benefits Board (PEBB), an arm of the HCA, responded to their request by a letter in which she indicated that the HCA could not declare an individual eligible for benefits without direction from that person's employer. The deputy program manager stated:
the individual community colleges determine their own employee definitions through a bargaining process. The bargained definitions and faculty contracts direct the employment practices at each institution, and the institutions then apply the benefit eligibility category from our WACs they believe to be most appropriate. The Health Care Authority does not have any authority to oversee employment contracts or bargaining decisions made at the individual institutions; therefore, we are unable to declare an individual employee eligible for benefits without direction from their employer.
AR at 34.
Mader and Knudsen appealed the deputy program manager's decision to the administrator of the HCA. They maintained that they were "entitled to state-paid health benefits during the summer months" based on the plain language of the HCA's regulation set forth in WAC 182-12-115(4) or (5). AR at 3. The presiding officer who considered their appeal permitted the State Board of Community and Technical Colleges to intervene.
The presiding officer thereafter issued a decision in which she denied the petitioners' claim of eligibility for employer contributions to their health care coverage during the summer quarter of 1999.[2] The presiding officer indicated that because Mader and Knudsen signed contracts for each quarter in which they taught classes, the proper regulation for determining their eligibility for employer contributions to their health care coverage was WAC 182-12-115(5). That regulation requires a part-time faculty member who works on a quarter/semester to quarter/semester basis to work at least half-time for *934 two consecutive quarters/semesters in order to be eligible for employer contributions to health care coverage. WAC 182-12-115(5). Based on a determination that the petitioners had not worked at least half-time during the summer of 1999, the presiding officer concluded that petitioners were not eligible for the employer contributions they sought.
Mader and Knudsen, together, sought judicial review of the HCA decision in King County Superior Court. The superior court granted review[3] and certified the matter as a class action upon the motion of Mader and Knudsen and with no opposition from the HCA.[4] The class was ultimately defined by the superior court as
[a]ll present or former part-time `academic employees,' as that term is defined in RCW 28B.50.489(3), who worked for the Washington State community or technical colleges and received employer-paid health coverage during the spring quarter or semester of a year, but were considered to have worked less that [sic] half of a full-time workload during the subsequent summer quarter and who therefore did not receive employer-paid health coverage in the summer. Subject to the applicable statute of limitations, the class includes all such academic employees, past, present, and future.
Clerk's Papers (CP) at 265.
The superior court divided the class into three subgroups, as follows:
1. Part-time community and technical college instructors who sign quarterly contracts and receive employer-paid health coverage during the Spring Quarter, but who do not sign a quarterly contract and do not work in the Summer Quarter and do not receive health benefits in the Summer Quarter because they are considered to work less than half of a full-time workload.
2. Part-time community and technical college instructors who sign quarterly contracts and receive employer-paid health coverage during the Spring Quarter, and who sign a quarterly contract for the Summer Quarter but are denied health benefits because they are considered to work less than half of a full-time workload.
3. Part-time community and technical college instructors who worked on other than a quarter to quarter or semester to semester basis and received employer-paid health coverage during the Spring Quarter, and who are denied health benefits in the Summer Quarter because they are considered to work less than half of a full-time workload.
CP at 269-70.
Following a hearing, the superior court affirmed the HCA's decision as to the first subgroup on grounds other than those upon which the HCA's decision was based. It concluded that members of the first subgroup, part-time instructors who do not sign summer quarter contracts, are not employees and therefore are not eligible for health benefits. The superior court further indicated that because the class members in the first subgroup are not state employees, the HCA should not have based its decision on WAC 182-12-115(5). It determined, however, that instructors in the second subgroup are employees of the State during the summer. It, therefore, reversed the decision of the HCA and required the HCA to "provide health benefits" to those instructors during the summer quarters in which they sign contracts. CP at 275. Insofar as the third subgroup was concerned, the superior court reserved ruling until further proceedings were conducted.
Mader and Knudsen, as well as the HCA and the State Board of Community and Technical Colleges, sought discretionary review *935 of the superior court's decision. The Court of Appeals, Division One, granted discretionary review and affirmed the superior court in part, holding that "part-time instructors who do not sign contracts and do not work during the summer quarter are not employees of the State during that period" and are therefore "not entitled to employer contributions to the premiums for employee health benefits during that time." Mader v. Health Care Auth., 109 Wash.App. 904, 907, 37 P.3d 1244, review granted, 146 Wash.2d 1021, 52 P.3d 520 (2002). The Court of Appeals also reversed the superior court in part, indicating that it exceeded the scope of its authority by reviewing the eligibility of the second and third subgroups in violation of the Administrative Procedure Act, chapter 34.05 RCW, when the HCA had not issued a decision regarding those two subgroups.
Mader and Knudsen petitioned this court for discretionary review on the question of whether the HCA properly determined that Mader and Knudsen were not eligible for employer contributions to their health care coverage during the summer quarter. We granted that petition.

II. Class Certification
Petitioners challenge the "effective decertification" of the second and third subgroups and request that we interpret Civil Rule (CR) 23(c)(1) in light of the Court of Appeals determination that the superior court exceeded its authority by considering the claims of employees other than those who did not teach during the summer quarter of 1999. The respondents contend that because the HCA determined only that the petitioners were ineligible for employer contributions for the summer quarter of 1999, due to the fact that neither taught more than half-time during that quarter, the superior court was required to limit its review, pursuant to RCW 34.05.554(1),[5] to community college teachers who did not sign contracts for the summer quarter of 1999.[6]
Although neither party here claims the class certification was improper and, in fact, both parties agreed to certification and differed only slightly in their proposed phrasing of the definition of the class, we feel compelled to examine the superior court's definition of the class. We have raised this issue sua sponte in order to assure a fair and orderly review. We may waive the rules of appellate procedure when necessary to "serve the ends of justice." RAP 1.2(c); see RAP 7.3, 12.2; Greengo v. Pub. Employees Mut. Ins. Co., 135 Wash.2d 799, 813, 959 P.2d 657 (1998); see also City of Seattle v. McCready, 123 Wash.2d 260, 269, 868 P.2d 134 (1994) (court has inherent discretionary authority to reach an issue not briefed by parties if the issue is necessary for decision); Kruse v. Hemp, 121 Wash.2d 715, 721, 853 P.2d 1373 (1993); Hall v. Am. Nat'l Plastics, Inc., 73 Wash.2d 203, 205, 437 P.2d 693 (1968) (an appellate court has authority to "decide crucial issues which the parties themselves fail to present").
When reviewing an administrative decision, the superior court is acting in its limited appellate capacity. Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp., 127 Wash.2d 614, 617, 902 P.2d 1247 (1995). However, RCW 34.05.510 permits the reviewing court to consider ancillary procedures such as certification of a class action under CR 23. RCW 34.05.510(2).
As stated above, the superior court defined the class as
*936 [a]ll present or former part-time `academic employees,' as that term is defined in RCW 28B.50.489(3), who worked for the Washington State community or technical colleges and received employer-paid health coverage during the spring quarter or semester of a year, but were considered to have worked less that [sic] half of a full-time workload during the subsequent summer quarter and who therefore did not receive employer-paid health coverage in the summer. Subject to the applicable statute of limitations, the class includes all such academic employees, past, present, and future.
CP at 265.
A court's decision to certify a class is discretionary and will not be overturned absent a manifest abuse of discretion. Eriks v. Denver, 118 Wash.2d 451, 466, 824 P.2d 1207 (1992). A court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable or arbitrary. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 683, 15 P.3d 115 (2000). Based on the definition certified by the superior court, and the record presented to us, it is unclear whether the class definition would support a conclusion that its members teach on a career seasonal/instructional year basis, even if the superior court had determined that Mader and Knudsen were "employed" by the State, and therefore "academic employees." That, however, is the essence of the petitioners' request for review of the HCA's decision. We conclude, therefore, that the class definition is insufficient. It does not appear, however, to be due to an abuse of discretion. It is simply an unclear definition. An imprecise class need not be fatal. See generally O'Brien v. Shearson Hayden Stone, Inc., 90 Wash.2d 680, 688, 586 P.2d 830 (1978), adhered to on recons., 93 Wash.2d 51, 605 P.2d 779 (1980). Consequently, we remand this matter to the superior court to clarify its definition of the class. Because we do so, we need not reach the question of whether the trial court exceeded its authority by considering two subgroups of the class which the agency did not consider when making its decision.

III. Eligibility for Employer Contributions to Health Care Coverage
Although we remand to the superior court for decertification of the class, we must address Mader's and Knudsen's claims that they are eligible for employer contributions to their health care coverage during the summer quarter of 1999 under either WAC 182-12-115(4) or (5). In doing so we review the HCA's determination that petitioners are ineligible for coverage under the criteria established by the PEBB for employer contributions during the summer quarter.[7]
The Washington Administrative Procedure Act (WAPA) governs review of a decision by the Health Care Authority. RCW 34.05.510. Relief from an administrative decision will be granted when the law is erroneously interpreted or applied by the agency. RCW 34.05.570(3)(d). In conducting our review of an administrative decision we sit in the same position as the superior court, applying the WAPA standards directly to the record before the agency. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). While an agency's findings of fact are granted deference, applying the law to the facts is a question of law which we review de novo. Id. at 403, 858 P.2d 494.
The Washington state health care reform act of 1988 established the Washington state health care authority and indicated that its purpose is to "develop health care benefit programs, funded to the fullest extent possible by the employer, that provide comprehensive health care for eligible state employees." RCW 41.05.006(2). The HCA must balance the State's interest in "provid[ing] the most comprehensive health care possible" with the interest in minimizing the financial *937 burden health care imposes on the state. Id. "[A]ll full-time and career seasonal employees of the state" are covered by the HCA's benefit programs. RCW 41.05.011(6); see also RCW 41.05.006(2). "[A]ll part-time and temporary employees" are covered under the terms and conditions established by the HCA pursuant to chapter 41.05 RCW. Id. The PEBB was established within the HCA to determine the eligibility criteria for state employees to receive health care coverage through the State. RCW 41.05.055, .065; WAC 182-08-020(2). State employees who satisfy the PEBB's criteria are eligible to receive employer contributions to their health care insurance. WAC 182-08-120, -190.
In order to determine eligibility for health care coverage, the PEBB established seven categories of criteria for state employees in WAC 182-12-115. Petitioners argue that they should be classified as "career seasonal/instructional employees" under WAC 182-12-115(4) and assert that they are, therefore, eligible for employer contributions to their health care coverage during the summer quarter. Mader and Knudsen alternatively claim that if they are ineligible under WAC 182-12-115(4) then they are eligible for employer contributions during the summer as "part-time faculty" under WAC 182-12-115(5). In relevant part, WAC 182-12-115 states:
The following employees of state government, higher education, K-12 school districts, educational service districts, political subdivisions and employee organizations representing state civil service workers are eligible to apply for coverage by PEBB plans....
....
(4) "Career seasonal/instructional employees[.]" Employees who work half-time or more on an instructional year (school year) or equivalent nine-month seasonal basis.... These employees are eligible to receive the employer contribution for insurance during the off-season following each period of seasonal employment.
(5) "Part-time faculty." Faculty who are employed on a quarter/semester to quarter/semester basis become eligible to apply for coverage beginning with the second consecutive quarter/semester of half-time or more employment at one or more state institutions of higher education....
Employers of part-time faculty must:
(a) Consider spring and fall as consecutive quarters/semesters when determining eligibility; and
(b) Determine "halftime or more employment" based on each institution's definition of "full-time"; and
....
(e) Once enrolled, if a part-time faculty member does not work at least a total of half-time in one or more state institutions of higher education, eligibility for the employer contribution ceases.
The HCA based its conclusion that Mader and Knudsen were ineligible for employer contributions on its interpretation of the above-quoted regulation. First, it determined that because there are different criteria for "career seasonal/instructional employees" and "part-time faculty" "logic requires that [Mader and Knudsen] be classified as one or the other." AR at 392. Second, the HCA concluded that Mader and Knudsen are not career seasonal/instructional employees because WAC 182-12-115(4) should be construed to apply only to K-12 school employees and not to part-time community college faculty. To apply WAC 182-12-115(4) to part-time instructors such as Mader and Knudsen, the HCA reasoned, would render subsection (5) meaningless and out of harmony with the remainder of the regulation.
We interpret regulations under the rules of statutory construction. City of Kent v. Beigh, 145 Wash.2d 33, 45, 32 P.3d 258 (2001). We construe the act as a whole giving effect to all of the language used. "Rules and regulations are to be given a rational, sensible interpretation." Dep't of Licensing v. Cannon, 147 Wash.2d 41, 57, 50 P.3d 627 (2002) (citing State v. Thomas, 121 Wash.2d 504, 512, 851 P.2d 673 (1993)).
*938 WAC 182-12-115(4) does not, as the HCA determined, apply only to K-12 school employees to the exclusion of part-time community college faculty. Reading WAC 182-12-115 in its entirety supports our conclusion. The initial provision in the regulation states, "The following employees of state government, higher education, K-12 school districts,... are eligible to apply for coverage by PEBB plans." WAC 182-12-115. In our view, this language indicates that employees of higher education are not excluded from any particular provision in WAC 182-12-115, provided they satisfy the criteria set forth in the provision. WAC 182-12-115(4), therefore, includes those part-time community college instructors who "work half-time or more on an instructional year (school year) or equivalent nine-month seasonal basis." WAC 182-12-115(4).
Our interpretation of WAC 182-12-115(4) does not render WAC 182-12-115(5), which specifically addresses part-time faculty, meaningless or out of harmony with the entire regulation. It is evident that not all part-time instructors will satisfy WAC 182-12-115(4). WAC 182-12-115(5), therefore, provides coverage for those members of a faculty who satisfy its criteria. WAC 182-12-115(5) fills a gap for employees who may have variable work patterns. For instance, a beginning part-time instructor may not satisfy the elements of WAC 182-12-115(4) after teaching only two quarters, but he or she may qualify for benefits under WAC 182-12-115(5). Another part-time instructor may regularly teach less than half-time, but on occasion teach additional courses such that he or she works half-time or more in a quarter. If that instructor does so for two consecutive quarters, he or she may be eligible under WAC 182-12-115(5); if the instructor reverts to a schedule of less than half-time, he or she is likely to be ineligible for coverage. WAC 182-12-115(5), in part, establishes a "line" at which part-time faculty may become eligible for employer contributions, that is, after two consecutive quarters or semesters teaching half-time or more. Including qualifying part-time faculty in WAC 182-12-115(4) does not, therefore, render WAC 182-12-115(5) meaningless or out of harmony with the entire regulation.
If a regulation is unambiguous, intent can be determined from the language alone, and we will not look beyond the plain meaning of the words of the regulation. Thurston County v. Cooper Point Ass'n, 148 Wash.2d 1, 12, 57 P.3d 1156 (2002); Kilian v. Atkinson, 147 Wash.2d 16, 20-21, 50 P.3d 638 (2002); Flanigan v. Dep't of Labor & Indus., 123 Wash.2d 418, 426, 869 P.2d 14 (1994); Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994); In re Matter of Juveniles A, B, C, D, E, 121 Wash.2d 80, 87, 847 P.2d 455 (1993). However, the plain meaning of a regulation may also be "`discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Thurston County, 148 Wash.2d at 12, 57 P.3d 1156 (quoting Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002)). We recently adopted the second approach to the plain meaning rule because it is "`more likely to carry out legislative intent.'" Id. (quoting Dep't of Ecology, 146 Wash.2d at 12, 43 P.3d 4).
Either approach to the plain meaning rule supports the conclusion that the HCA erred in determining that WAC 182-12-115(4) does not apply to part-time community college instructors even if they satisfy the criteria set forth in the regulation. The plain meaning of the language in WAC 182-12-115(4) is that a state employee is eligible for employer contributions to his or her health care benefits when he or she "work[s] half-time or more on an instructional year ... or equivalent nine-month seasonal basis." WAC 182-12-115(4). Any state employee who satisfies this provision is, therefore, eligible for employer contributions to their health care benefits during the "off-season," which is that time not within the instructional year or equivalent nine-month season.
Whether a state employee works "half-time or more" is based on calculating the number of hours a "part-time academic employee" works as a percentage of a full-time employee's work load. RCW 28B.50.4891. The superior court and Court of Appeals found that Mader and Knudsen were not *939 "academic employees" during the summer of 1999 because they neither signed teaching contracts nor worked during that time. As a result, both courts concluded that the provisions of WAC 182-12-115(4) were inapplicable. Under that analysis a calculation under RCW 28B.50.4891 could not be reached. However, this approach ignores the fact that in order to determine whether a state employee is a "career seasonal/instructional employee," WAC 182-12-115(4) requires examination of the employee's work status during the instructional year or equivalent nine-month season. WAC 182-12-115(4). The focus in determining an employee's eligibility status should not be on the "off-season." Under WAC 182-12-115(4), the "off-season" is not related to an employee's eligibility. It is included in the provision solely in relation to the fact that eligible "career seasonal/instructional employees" will receive employer contributions during the months they are not working. The lower courts, therefore, improperly relied on the fact that Mader and Knudsen did not sign contracts for the summer quarter of 1999 in concluding the petitioners were ineligible for employer contributions.
In reaching our conclusion that petitioners are not necessarily excluded from eligibility for employer contributions under WAC 182-12-115(4) due to their status as "part-time" faculty who sign contracts each quarter, we have given full consideration to the legislature's recent statement of intent that public employers are prohibited from misclassifying employees based on labels alone in order to "avoid providing or continuing to provide employment-based benefits to which employees are entitled under state law." RCW 49.44.160. Rather than arbitrary labels, "[o]bjective standards, such as control over the work and the length of the employment relationship, should determine whether a person is an employee who is entitled to employee benefits." RCW 49.44.160 (emphasis added). "Misclassify" is defined as "to incorrectly classify or label a long-term public employee as `temporary,' `leased,' `contract,' `seasonal,' `intermittent,' or `part-time,' or to use a similar label that does not objectively describe the employee's actual work circumstances." RCW 49.44.170(2)(d) (emphasis added). The legislature's expression of its intent in enacting RCW 49.44.160 and.170 is persuasive. In effect, the legislature indicated that the HCA should not exclude employees from eligibility for comprehensive health care coverage simply because they are labeled "part-time."[8]
The HCA did not examine Mader's or Knudsen's actual work circumstances to determine whether either satisfied the eligibility requirements of WAC 182-12-115(4). If it had it would have noted that Mader worked for 21 years on a half-time or more basis fall through spring quarters. Twenty-one years is not a "temporary" position. The HCA did find that Mader's employment pattern of working half-time or more fall through spring quarters continued in the 1998-99 academic year.
The record is similar for Knudsen. For more than 10 years she worked more than half-time, fall through spring, with the exception of fall 1994. The HCA found that she worked half-time or more for the 1998-99 academic year as well. In addition, the record shows that prior to the end of the spring quarters in 1998 and 1999, Knudsen received letters of reasonable assurance from CCS which offered her a continuing position teaching more than half-time in the upcoming fall quarter. "Reasonable assurance is a *940 bona fide offer from an educational institution to assign an individual future work at that institution under the same terms and conditions as the individual's previous employment. It is less than a contract or written agreement, but more than a mere possibility of future employment." WAC 192-210-015(1). Knudsen signed both offers for future employment. It appears that both the school district and Knudsen anticipated a continuing employment pattern of part-time instruction each instructional year, fall through spring.

IV. Conclusion
Both the plain meaning of the language in WAC 182-12-115 and the legislative intent behind the recent enactment of RCW 49.44.160 and .170 support our holding that the HCA must employ an individualized approach to a determination of eligibility for employer contributions to a state employee's health care coverage. The HCA must examine the actual work circumstances of a state employee, rather than the contracts or titles under which he or she is employed, to determine whether an employee satisfies the eligibility requirements of WAC 182-12-115. This is not what the HCA did with Mader's and Knudsen's claims. We therefore remand to the HCA for a determination, consistent with this opinion, of Mader's and Knudsen's eligibility for health care coverage. Because we conclude that the HCA erred in determining that WAC 182-12-115(4) could not apply to Mader and Knudsen we need not reach the question of eligibility for employer contributions under WAC 182-12-115(5).
WE CONCUR: JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, JJ., SMITH, J. Pro Tem.
NOTES
[*] Final star pagination not available due to amendment of opinion.
[1] The letter states that Knudsen is "scheduled to teach a 66% load." Certified Appeal Board Record at 244. It appears that Knudsen crossed out 66% and indicated she was schedule to teach an "88.34%" work load. Id.
[2] In the initial request to the HCA, Mader and Knudsen sought determination of their eligibility for employer contributions to their health care insurance during summer quarters generally; they did not request a determination specific to the summer quarter of 1999. They have maintained this distinction in their pleadings throughout this case. However, the HCA specifically ruled as to the summer quarter of 1999 only.
[3] The review was combined with an on-going superior court action which involved multiple claims and two other actions. The actions included (1) part-time instructors at community and technical colleges against the Department of Retirement Systems and the State Board for Community and Technical Colleges; (2) a tort action filed against the Health Care Authority; and (3) a class action judicial review of the Health Care Authority's decision to deny employer contributions to health coverage to part-time instructors (the current matter).
[4] The HCA agreed to class certification with only minimal disagreement on the definition of the class.
[5] "Issues not raised before the agency may not be raised on appeal...." RCW 34.05.554(1).
[6] The HCA concluded that Mader and Knudsen were ineligible for employer contributions during the summer quarter of 1999 based on an analysis under WAC 182-12-115 because neither taught more than half-time. The superior court determined that the HCA should not have based its analysis on WAC 182-12-115 because Mader and Knudsen did not sign contracts for the summer quarter and were therefore not "employed" during that quarter. It appears that because the superior court shifted the focus of the analysis from whether the petitioners taught half-time or more to whether they signed contracts, the respondents argued along the lines of the superior court's analysis. This distinction is pointed out for clarification. It is not particularly important to our consideration of the class certification issue at this time.
[7] Although petitioners argue their claims relate to summer quarters generally, the HCA ruled only as to eligibility for the summer of 1999 and did not otherwise comment on other summers. Review of the agency decision is, therefore, limited to the summer of 1999 because we cannot say whether the agency erroneously interpreted or applied the law as to other summers when there are no findings of facts or conclusions we can review. See generally RCW 34.05.570(3)(d).
[8] The 2002 legislature was reacting, in part, to the case before us when it enacted RCW 49.44.160 and .170. The 2002 Final Legislative Report, which became RCW 49.44.170, states, "The practice of providing less generous compensation to some contingent workers is sometimes justified on the basis that the employer should provide more generous compensation to persons who perform full-time services, or have performed services for a longer period of time. In some cases, however, public employers use labels to justify providing different levels of benefits to employees who have rendered identical levels of service, for identical periods of time, for the employer....

"In recent years some public employers, such as Metro-King County, and the State Board for Community Colleges, have been taken to court by employees who claimed that they had been misclassified in some manner.... A large case involving part-time community college faculty eligibility for retirement and health benefits is still pending." 2002 FINAL LEGISLATIVE REPORT, ESSB 5264, 57th Leg., Reg. Sess. 144 (2002).