# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TOP CAT ENTERPRISES, LLC, a, Washington Corporation, | ) ) ) | No. 79224-5-I |
| Appellant, | ) ) ) | |
| v. | ) ) | DIVISION ONE |
| CITY OF ARLINGTON, a Washington municipal corporation; and WASHINGTON STATE LIQUOR AND CANNABIS BOARD, a state agency, | ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) ) | FILED: January 6, 2020 |

MANN, A.C.J. — Top Cat appeals the Washington State Liquor and Cannabis Board's (WSLCB) decision to license 172nd Street Cannabis in the City of Arlington. Top Cat contends that WSLCB incorrectly interpreted the meaning of "property line" in WAC 314-55-050(10), and improperly determined the distance between 172nd Street Cannabis and Weston High School, by measuring from the leased lot lines, rather than the fee simple boundary lines. Top Cat argues that the improper measurement resulted in 172nd Street Cannabis being located less than 1000 feet from a school.

We agree with the WSLCB that the appropriate measure was between the leased lot lines. We affirm.

I.

In 2012, Washington voters approved Initiative 502 (I-502) LAWS OF 2013, ch. 3 (codified in part of chapter 69.50 RCW). I-502 established a regulatory system for the production, processing, and distribution, of limited amounts of marijuana for recreational use by adults. WSLCB used a lottery system to award 334 retail licenses. Licenses granted under the lottery system were jurisdiction specific. A license applicant was required to stay within the jurisdiction in which they applied, even if that jurisdiction issued a ban or moratorium on retail licenses.

In 2015, the Cannabis Patient Protection Act (CPPA) merged the preexisting medical marijuana program with the recreational marijuana retail stores established under I-502. LAWS OF 2015, ch. 70 (codified in part of chapter 69.50 RCW). The CPPA also directed WSLCB to reopen the application period for retail stores and issue additional licenses addressing the needs of the medical market. LAWS OF 2015, ch. 70. WSLCB increased the number of retail licenses by 222. Rather than implement a lottery system similar to I-502, the CPPA prioritized new marijuana applications as Priority 1, Priority 2, or Priority 3, which distinguished between applicants' degree of experience and qualifications in the marijuana industry. Former RCW 69.50.331 (2015); former WAC 314-55-020 (2015). Because of the large number of applicants, only Priority 1 applicants were able to move forward with the licensing process. In addition to Priority 1 applicants, the CPPA allowed licensees from I-502's lottery that were barred from opening retail stores because of local bans to transfer their license to jurisdictions without local bans on marijuana sales.

Because only a limited number of new licenses were available, applicants needed to finish the WSLCB licensing process before other applicants to ensure that they obtained one of the open spots in a particular jurisdiction. RCW 69.50.331 requires both I-502 licensees and Priority 1 CPPA applicants to meet statutory requirements before WSLCB grants a retail license. One of these requirements prohibits WSLCB from licensing a retail business within 1000 feet of "the perimeter of the grounds of" a school. RCW 69.50.331(8)(a).

Top Cat was originally selected in the I-502 lottery for a retail location in the City of Marysville. Top Cat completed the licensee process and received a license for a retail business in Marysville on November 12, 2014. During the licensing process, Marysville enacted a ban on marijuana retailers, which prevented Top Cat from opening its store.

On January 29, 2016, Top Cat applied to move its retail license from Marysville to Arlington. At the time, there was only one available retail license available in Arlington.

Previously, 172nd Street Cannabis applied for a marijuana retail license in Arlington under the CPPA's priority system and received a Priority 1 designation on December 8, 2015. WSLCB assigned 172nd Street Cannabis's application to WSLCB Senior Marijuana Licensing Specialist Sean Houlihan. 172nd Street Cannabis sought a license for a leased property at 5200 172nd St. N.E., F-101 in Arlington. The proposed location is leased lot 500B on the Arlington Municipal Airport property (Airport property).

The Airport property is approximately 1,200 acres in size and is partitioned into over 100 distinct parcels that are available to lease. Arlington School District No. 16

leases lot 301 for Weston High School. Weston High School's lease is recorded with the Snohomish County Auditor and includes a legal description of the property. A cyclone fence fully encloses lot 301 for security. Weston High School's lot 301 is on the north side of 172nd St. NE. 172nd Street Cannabis's lot 500B is located on the south side of 172nd St. SE.

The following Airport Property Boundary and Lease Lot map depicts the Airport property boundaries, leased lots within the Airport property (including Weston High School), and the location of 172nd Street Cannabis.[1]



---

[1] (Labels added). This image is rotated so that north is to the right. 172nd Street NE runs east-west between Weston High School and 172nd Street Cannabis, but is not visible in the above image.

Specialist Houlihan measured the distance between 172nd Street Cannabis's lot 500B and Weston High School's lot 301 and concluded that the lots are over 1,600 feet apart from one another and thus consistent with the 1000-feet separation requirement.

Prior to the final inspection of Top Cat's application, WSLCB issued the only retail license in Arlington to 172nd Street Cannabis. WSLCB closed licensing in Arlington and offered Top Cat the opportunity to remain in Marysville or relocate to another jurisdiction with retail licenses still available.

Top Cat requested an administrative hearing and the case was assigned to an Administrative Law Judge (ALJ) at the Office of Administrative Hearings. Top Cat objected to the approval of 172nd Street Cannabis's license on the basis that the retail location was less than 1000 feet from the Airport property where Weston High School is located. Specifically, Top Cat contended that Weston High School is located within the larger Airport property located north of 172nd Street NE and identified as Snohomish County Parcel No. 31052100400102. And because the Airport property is immediately diagonal from the proposed retail store for 172nd Street Cannabis and separated by only 120 feet, 172nd Street Cannabis's location did not meet the 1000 foot separation requirement. WSLCB responded that the lease lots are distinct parcels and that those boundaries are depicted on the Airport Property Boundary and Lease Lot map. Therefore, WSLCB contended that specialist Houlihan correctly measured the distance between lot 500B and lot 301.

The ALJ's initial order affirmed the approval of 172nd Street Cannabis's license. The ALJ concluded that "property line" in WAC 314-55-050(10) is not ambiguous and that its usual and ordinary meaning is "those lines which separate one's lot from

-5-

adjoining lots or the street." Thus, the ALJ explained that the lease lot lines for the Airport property were property lines within the meaning of WAC 314-55-050(10). Top Cat filed a petition for review of the initial order to WSLCB. On July 25, 2017, WSLCB issued a final order affirming the initial order and adopting the ALJ's findings of fact and conclusions of law.

On August 22, 2017, Top Cat petitioned for review by the Snohomish County Superior Court. On November 1, 2018, the superior court affirmed WSLCB's final order. Top Cat appeals.

II.

Top Cat contends that the WSLCB erred in concluding that the term "property line" within WAC 314-55-050(10) includes not only formal, recorded, boundary lines, but also lease lines and lot lines.

The Washington Administrative Procedure Act (APA) governs our review of WSLCB's final order. RCW 34.05.570; Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). This court sits in the same position as the superior court, applying the standards of the APA directly to the record before the agency. Tapper, 122 Wn.2d at 402. "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). We will not overturn an agency's legal determination unless the agency engaged in an unlawful procedure or decision-making process, failed to follow a prescribed procedure, or erroneously interpreted or applied the law. RCW 34.05.570(3). Top Cat challenges whether the WSLCB's final order contained an erroneous interpretation or application of the law.

We interpret agency regulations as if they were statutes and review WSLCB's legal determinations de novo. Wash. Cedar & Supply Co., Inc. v. State, Dep't of Labor of Indus., 137 Wn. App. 592, 598, 154 P.3d 287 (2007). We give substantial weight, however, to an agency's interpretation of statutes and regulations within its area of expertise. Id. at 598. "Accordingly, we will uphold an agency's interpretation of a regulation if it reflects a plausible construction of the statutory language and is not contrary to the legislature's intent and purpose." Id. at 598.

Under I-502, the WSLCB is prohibited from issuing "a license for any premises within one thousand feet of the perimeter of the grounds of any elementary or secondary school." RCW 69.50.331(8)(a). The legislature also empowered WSLCB to adopt regulations regarding retail outlet locations. RCW 69.50.342(1)(f). In response, WSLCB promulgated WAC 314-55-050(10), which states:

> the [WSLCB] shall not issue a new marijuana license if the proposed licensed business is within one thousand feet of the perimeter of the grounds of any of the following entities. The distance shall be measured as the shortest straight line distance from the property line of the proposed building/business location to the property line of the entities listed below:

> (a) Elementary or secondary school;

Top Cat focuses on the second sentence in WAC 314-55-050(10) and contends that the term "property line" means the legal description from a deed that describes the boundaries of real property. We disagree.

"If a regulation is unambiguous, intent can be determined from the language alone, and we will not look beyond the plain meaning of the words of the regulation." Mader v. Health Care Auth., 149 Wn.2d 458, 473, 70 P.3d 931 (2003). The plain meaning of a regulation may also be "discerned from all that the Legislature has said in

-7-

the statute and related statutes which disclose legislative intent about the provision in question." Mader, 149 Wn.2d at 473 (internal quotations omitted).

WSLCB concluded that property line is not an ambiguous term and that its usual and ordinary meaning is "those lines which separate one's lot from adjoining lots or the street." We agree.[2]

WSLCB's decision was guided by Mall, Inc. v. City of Seattle, 108 Wn.2d 369, 373, 375, 739 P.2d 668 (1987). In Mall, our Supreme Court held that property line is commonly understood as "those lines which separate one's lot from adjoining lots or the street." Id. at 375. The issue in Mall was whether the Seattle zoning law allowed a landowner to count that portion of its land that is encumbered by a street easement in computing the allowable floor area for a structure. Id. at 374. Under the Seattle Municipal Code (SMC) the gross floor area of any structure could not exceed ten times the "lot area." Id. at 374. The SMC defined lot area as "the total horizontal area within the lot lines of a lot." Id. at 374-75. In turn, the SMC defined lot lines as "the property lines bounding a lot." Id. at 369. While the term "property line" was not defined by city code, the Court concluded that property lines are "commonly understood as those lines which separate one's lot from adjoining lots or the street." Id. at 375. Although the fee simple owner had a reversionary interest in the land underlying the condemned street easement, the property line ended at the street line and the condemned street easement was not included in the calculation of the "lot area." Id. at 375.

---

[2] Top Cat argues that its interpretation of property line is supported by regulatory history including amendments to WAC 314-55-050(10). But we only resort to the legislative history where the regulation is ambiguous. Cannon v. Dep't of Licensing, 147 Wn.2d 41, 57, 50 P.3d 627 (2002). Because we agree with the WSLCB that the term property line is unambiguous we do not consider the legislative history.

The WSLCB found that the dictionary definition of property line is consistent with Mall's interpretation of property line. The Board also relied upon two dictionaries for the definition of property line as "the boundary line between two pieces of property."[3] We agree with the WSLCB. Under Mall and the dictionary definitions it relied upon, "property line" is a term that includes the boundary lines delineating different types of property interests, including a lease lot line. The key is that the property boundary separates the property from other lots or properties. Here, the school's lease is on lot 301—one of numerous lease lots on the larger Airport property. The school property is distinct and separate from other lots within the Airport property, including lot 500B.

We also agree that the WSLCB's interpretation of the term property line is consistent with the stated legislative purpose of ensuring marijuana businesses are physically located at least 1,000 feet away from the "perimeter of the grounds" of any elementary or secondary school or other restricted entity. RCW 69.50.331(8)(a). The statute does not mention "property line"—only that a marijuana business must be 1,000 feet from "the perimeter of the ground" of a restricted entity. RCW 69.50.331(8)(a). The interpretation of the term property line therefore must be consistent with the stated intent of the statute to insure that marijuana businesses are at least 1,000 from the perimeter of the grounds of a restricted entity.

The first sentence of WAC 314-55-050(10) mirrors the statute and states that the WSLCB "shall not issue a new marijuana license if the proposed licensed business is within one thousand feet of the perimeter of the grounds of any" restricted entity. The

---

[3] VOCABULARY.COM, https://www.vocabulary.com/dictionary/property%20line (last visited Apr. 12, 2019); WORDWEB ONLINE, https://www.wordwebonline.com/search.pl?w=property+line (last visited Apr. 12, 2019).

second sentence of WAC 314-55-050(10) explains how to measure the distance between the licensed business and the prohibited entity by measuring the shortest distance between the two property lines. The regulations also define the "perimeter" as "a property line that encloses an area." WAC 314-55-010(28). Read together, the WSLCB cannot issue a license for a location that is within 1,000 feet of the property line that encloses an area of the grounds of any restricted entity.

As the WSLCB concluded:

Here, the legislative intent of the 1,000 foot separation is apparent from the plain language of RCW 69.50.331(8). The purpose of the separation is to prevent a marijuana business from being located within 1,000 feet of the perimeter of school grounds, so as to minimize the possibility that children will gain access to it . . . . What is important, and what is required by statute and regulation, is the physical separation of at least 1,000 feet between the perimeter of the school grounds and the premises of a marijuana retail business.

We agree.

The WSLCB's measurement of the distance between the perimeter of Weston High School's lot 301 and 172nd Street Cannabis's lot 500B as over 1,600 feet is consistent with RCW 69.50.331(8)(a) and WAC 314-55-050(10). WSLCB did not err in determining the location exceeded the 1,000 feet separation requirement.[4]

---

[4] We note also that Top Cat's suggested interpretation creates the potential for absurd results. "We should not construe a regulation in a manner that is strained or leads to absurd results." Overlake Hosp. Ass'n v. Dep't of Health, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). Consider the following hypothetical: the federal government owns Olympic National Park and leases a legally described parcel on the western side of Olympic National Park to a Native American Tribe for a whale study school. On the eastern side of Olympic National Park, within 1000 feet of the Park, a retail cannabis business seeks a license from WSLCB. The driving distance on State Route 101 between the whale school and the proposed retail location would be over 100 miles. But under Top Cat's interpretation of property line, the measured distanced would be between the proposed cannabis business and the edge of Olympic National Park, not the lease line for the whale school. This would result in a denial of a license for the proposed cannabis business even though driving distance between the two entities would be over 100 miles. This cannot be what the legislature or WSLCB meant when it used the terms perimeter or property line.

We affirm.

_____ Mann, ACJ

WE CONCUR:

_____ Leach, J.

_____ Dwyer, J.